UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN R. ANDREWS, JR.,

                    Plaintiff,

v.                                                            Civil No: 1:21-CV-00746

TOWN OF WEST SENECA, NEW YORK, et al.

                    Defendants.

_____

## <u>STIPULATION AND ORDER</u>

        It hereby is stipulated by and between the undersigned, RUPP BAASE PFALZGRAF CUNNINGHAM LLC, Chad A. Davenport, Esq., attorneys for the plaintiff, BAXTER SMITH & SHAPIRO, P.C., Arthur J. Smith, Esq., attorneys for the Town of West Seneca defendants, that the parties agree and stipulate as follows:

        1.      Plaintiff shall file an amended complaint, attached as **Exhibit A** to this stipulation, by no later than July 29, 2022.

        2.      Plaintiff's filing of the amended complaint attached hereto shall be considered good and sufficient service on the Town of West Seneca defendants.

        3.      The amended complaint attached hereto shall be the operative complaint for this matter pursuant to Fed. R. Civ. P. 15(a)(2).

4.      The Town of West Seneca defendants shall have 30 days to respond to the amended complaint attached hereto, and the deadline for their response shall be **August 21, 2022**.


_____*s/Chad A. Davenport*_____          _____*s/Arthur J. Smith*_____
**RUPP BAASE PFALZGRAF**               **BAXTER SMITH & SHAPIRO, P.C.**
**CUNNINGHAM LLC**                     Arthur J. Smith
Chad A. Davenport                      Attorneys for Defendants
Attorneys for Plaintiff                99 North Broadway
1600 Liberty Building                  Hicksville, New York 11801
Buffalo, New York 14202                (516) 997-7330
(716) 854-3400                         asmith@bssnylaw.com
davenport@ruppbaase.com                Date:  July 21, 2022
Date:  July 14, 2022


SO ORDERED:_____
                    Hon. Leslie G. Foschio
4888-0356-2537, v. 1

EXHIBIT A

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

**JOHN R. ANDREWS, JR.**
1 Queens Drive
West Seneca, New York 14224

       Plaintiff,

v.

**TOWN OF WEST SENECA, NEW YORK**
1250 Union Road
West Seneca, New York 14224

**KEVIN BARANOWSKI**, individually and in his official capacity as a detective for the West Seneca Police Department,
1250 Union Road
West Seneca, New York 14224

**DONALD DRISCOLL**, individually and in his official capacity as a detective for the West Seneca Police Department,
1250 Union Road
West Seneca, New York 14224

**JEFFREY COIA**, individually and in his official capacity as an officer for the West Seneca Police Department,
1250 Union Road
West Seneca, New York 14224

**JAMIE PAPPACENO**, individually and in his official capacity as an officer for the West Seneca Police Department,
1250 Union Road
West Seneca, New York 14224

**GERALD FIBICH**, individually and in his official capacity as an officer for the West Seneca Police Department,
1250 Union Road
West Seneca, New York 14224

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

Civil Action No. 1:21-CV-00746

**ROBERT DEPPELER**, individually and in his
official capacity as an officer for the
West Seneca Police Department,
1250 Union Road
West Seneca, New York 14224

**JAMIE PIMENTEL**,
1 World Trade Center
Suite 741
Long Beach, California 90831

**GLENN ERNY**,
250 Delaware Avenue,
Buffalo, New York 14202

**UNITED STATES**,
500 12th Street SW
Washington, DC 20536

Defendants.

Plaintiff, John R. Andrews, Jr. ("Plaintiff" or "Mr. Andrews") by his attorneys, Rupp Baase Pfalzgraf Cunningham LLC, as and for his second amended complaint against defendants, the Town of West Seneca, New York, Kevin Baranowski, Donald Driscoll, Jeffrey Coia, Jamie Pappaceno, Gerald Fibich, Robert Deppeler, Jamie Pimentel, Glenn Erny, and the United States (collectively referred to as "Defendants"), alleges as follows:

## **JURISDICTION**

1.      This action is brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), 42 U.S.C. §§ 1983 and 1988, and under the Fourth and Fourteenth Amendments of the United States Constitution.

2.      This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1983.

2

3.      Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of New York because the events forming the basis of this action occurred in this District.

## PARTIES

5.      At all times hereinafter mentioned, Mr. Andrews was and is a citizen of the State of New York, County of Erie, residing at 1 Queens Drive, West Seneca, New York 14224.

6.      Defendant, the Town of West Seneca, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at 1250 Union Road, West Seneca, New York 14224.

7.      Defendant, the Town of West Seneca, through its officers, agents, employees, and/or specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of police officers employed by the Town of West Seneca, including Kevin Baranowski, Donald Driscoll, Jeffrey Coia, Jamie Pappaceno, Gerald Fibich, and Robert Deppeler.

3

8.      Defendant, Kevin Baranowski, was and is a resident of County of Erie, and State of New York.  He was a lieutenant detective employed by the Town of West Seneca at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a lieutenant detective at the time of the incidents giving rise to this lawsuit. In addition, defendant Baranowski is being sued in his individual capacity for damages caused by his actions and/or conduct.

9.      Defendant, Donald Driscoll, was and is a resident of the County of Erie, and State of New York.  He was and is a detective employed by the Town of West Seneca at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a detective at the time of the incident giving rise to this lawsuit.  In addition, defendant Driscoll is being sued in his individual capacity for damages caused by his actions and/or conduct.

10.     Defendant, Jeffrey Coia, was and is a resident of the County of Erie, and State of New York.  He was and is a police officer employed by the Town of West Seneca at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Coia is being sued in his individual capacity for damages caused by his actions and/or conduct.

11.     Defendant, Jamie Pappaceno, was and is a resident of the County of Erie, and State of New York.  He was and is a police officer employed by the Town of West Seneca at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition,

4

defendant Pappaceno is being sued in his individual capacity for damages caused by his actions and/or conduct.

12.     Defendant, Gerald Fibich, was and is a resident of the County of Erie, and State of New York.  He was and is a police officer employed by the Town of West Seneca at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Fibich is being sued in his individual capacity for damages caused by his actions and/or conduct.

13.     Defendant, Robert Deppeler, was and is a resident of the County of Erie, and State of New York.  He was and is a police officer employed by the Town of West Seneca at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Deppeler is being sued in his individual capacity for damages caused by his actions and/or conduct.

14.     Defendant, Jamie Pimentel, was and is a resident of the State of California.  He was and is a Custom and Border Protection Officer employed by the United States of America at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a Custom and Border Protection Officer at the time of the incident giving rise to this lawsuit.  Defendant Pimentel is being sued in his individual capacity for damages caused by his actions and/or conduct.

15.     Defendant, Glenn Erny, was and is a resident of the County of Erie, and State of New York.  He was and is a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigation Department, employed by the United States of America, at all times hereinafter mentioned, and was acting within the

scope of his employment and official capacity as a Special Agent at the time of the incident
giving rise to this lawsuit.  Defendant Erny is being sued in his individual capacity for damages
caused by his actions and/or conduct.

16.     Defendant, the United States, was and is an entity existing under the laws
of the United States of America, including the United States Constitution and all laws enacted
pursuant to the Constitution.  Defendant United States has a business address at 500 12th Street
SW, Washington, DC 20536.  Defendant United States, through its officers, agents, and/or
employees defendants Pimentel and Erny committed the complained of actions at issue in this
litigation, as described below.

17.     At all relevant times, defendants the Town of West Seneca,
Kevin Baranowski, Donald Driscoll, Jeffrey Coia, Jamie Pappaceno, Gerald Fibich, and
Robert Deppeler (collectively referred to as "State Defendants") were acting under the color of
state law.

18.     At all relevant times, defendants Jamie Pimentel, Glenn Erny, and the
United States (collectively referred to as "Federal Defendants") were acting under the color of
Federal law.

## COMPLIANCE WITH REQUIREMENTS OF THE FEDERAL TORT CLAIMS ACT

19.     On December 22, 2022, Plaintiff timely filed an administrative claim with
the Department of Homeland Security, Immigration and Customs Enforcement, Homeland
Security Investigations by mailing a "Claim for Damage, Injury, or Death" to the United States
Immigration and Customs Enforcement Department located at 500 12th Street SW, Mailstop

6

5900, Washington, DC 20536, as required pursuant to the instructions set forth by ICE on its website.[1]  A letter demonstrating this compliance is attached as **Exhibit A**.

20.     The administrative claim filed with the appropriate Federal agency set forth the facts underlying Plaintiff's claims against Federal employees, Jamie Pimentel and Glenn Erny.  A copy of the administrative claim filed by Plaintiff is attached as **Exhibit B**.

21.     To date, no compensation has been offered by defendants Pimentel, Erny, or the United States in response to Plaintiff's presentation of this claim.

22.     It has been more than six months since Plaintiff filed his administrative claim with the appropriate Federal agency.

23.     In fact, during the more than six months since Plaintiff filed his administrative claim, neither Plaintiff nor Plaintiff's counsel have received any communication from defendants Pimentel or Erny regarding his proper presentation of a claim pursuant to the Federal Tort Claims Act ("FTCA").


## FACTUAL BACKGROUND

### Overview

24.     On May 24, 2011, Mr. Andrews was granted a Certificate of Relief from Disabilities for a previous Class A Misdemeanor for attempted escape from a county correctional facility.  He obtained the Certificate of Relief from the Alden Town Court in Alden, New York, on May 24, 2011.

25.     The May 24, 2011 Certificate of Relief from Disabilities provided Mr. Andrews the right to possess and own firearms.

---

[1] https://www.ice.gov/about-ice/opla/ftca

26.     On or around December 2019, Mr. Andrews purchased a solvent trap through the commercial website Wish.com.

27.     A solvent trap has multiple uses.  Examples of some uses are dry storage tubes and for cleaning motors and firearms by catching excess solvent and oil during the cleaning and lubrication process.

28.     In addition to Wish.com, solvent traps may be bought commercially through multiple websites, as well as at various gun stores, Army Navy surplus stores, and auto parts stores.

29.     However, upon information and belief, in the past, other individuals have used and converted solvent traps into firearm mufflers or silencers, which is illegal.

30.     The National Firearms Act defines a firearm silencer or muffler to mean "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for the use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." *See* 18 U.S.C. § 921(A)(24).

31.     For a solvent trap to be converted into a silencer, the owner must drill holes in all internal cups of the solvent trap as well as the bottom cap to allow a projectile to pass through and to prevent the solvent trap and firearm from exploding.

32.     On or around December 28, 2019, the solvent trap was delivered from its point of manufacture in China and arrived in the United States at the Los Angeles, California International Mail Facility.

33.     Customs and Border Protection ("CBP") Officer Jamie Pimentel targeted the package from China, labeled #LN152200950CN.

34.     Following a physical examination of the package, defendant Pimentel incorrectly classified the solvent trap as a firearms suppressor.

35.     On or around December 31, 2019, Special Agent Glenn Erny of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), Buffalo, New York office was notified that CBP in Los Angeles, California intercepted a package containing a firearm silencer and that it was destined to Mr. Andrews's home located at 1 Queens Drive, West Seneca, New York 14224.

36.     The notification from CBP Officer Pimentel included misleading photographs of the contents of the package, including a photograph that showed a hole on one end of the solvent trap.  The photographs, however, were insufficient to determine whether the solvent trap's internal cups and bottom cap were drilled to convert the legal solvent trap to an illegal firearm suppressor.

37.     On or around January 3, 2020, the West Seneca Police Department ("WSPD") was notified by HSI that a package containing a firearm suppressor was destined to arrive at Mr. Andrew's home, and HSI requested assistance from WSPD to investigate and seize the package.

38.     That notification was reduced to a written complaint, dated January 3, 2020, which was received and acted upon by WSPD detective Donald Driscoll.

39.     On or about January 6, 2020, Detective Donald Driscoll ("Detective Driscoll") from the West Seneca Police Department applied for a search warrant (the "search warrant application") from Judge Shannon Filbert of the Town of West Seneca Justice Court located in West Seneca, New York.

40.     Detective Driscoll swore on the search warrant application that he received information from SA Glenn Erny that Mr. Andrews was receiving a firearm silencer,

which was to be delivered at 1 Queens Drive, West Seneca, New York 14224 during a controlled delivery by law enforcement officers.

41.     Detective Driscoll swore that, on January 3, 2020, WSPD detectives were notified that the package was deemed suspicious and was intercepted by agents of CBP at a facility in Los Angeles, California.

42.     The package was addressed to Mr. Andrews at 1 Queens Drive, West Seneca, New York.

43.     According to Detective Driscoll, the package was received by "Law Enforcement Officers in Buffalo NY," but the search warrant application did not state whether the Buffalo "Law Enforcement Officers" investigated the package themselves to determine the contents of it.

44.     According to the police report regarding the incident, SA Glenn Erny had the package "FedExed to him for Agents of HSI and detectives of the WSPD to execute a controlled delivery of same to Andrews as soon as practicable."

45.     Buffalo "Law Enforcement Officers" should have opened the package to determine whether the solvent trap had been drilled and manufactured to convert the legal solvent trap into an illegal firearm suppressor; but instead they relied on the misleading photographs that did not show whether the bottom cap and internal cups were drilled to convert the legal solvent trap into an illegal firearm silencer and thus incorrectly characterized the solvent trap as a firearm suppressor without performing an independent investigation.

46.     Detective Driscoll wrote that based on his past experience of 26 years on the force involved in numerous investigations, Mr. Andrews's home and/or vehicle should be entered without giving notice of authority or purpose based on the grounds that giving notice

10

may endanger the life or safety of the executing police officers as it is likely firearms may be present.

47. Despite Detective Driscoll's recommendation, Mr. Andrews has never been involved in a violent crime.

48. Additionally, at the time, Mr. Andrews had never been investigated or convicted of any firearms related offenses, nor had there ever been any police calls to his home based on firearms.

49. Detective Driscoll also requested that Judge Filbert allow the seizure of any weapon the incorrectly categorized silencer is capable of attachment thereto.

50. In addition, Detective Driscoll also applied for the seizure of any evidence that tends to demonstrate criminal possession of weapons including ammunition, ammunition magazines, firearms boxes, holsters, and any personal papers or documents which would tend to identify the owner, lessee, or whomever has custody or control over the premises or items seized.

51. Later, on January 6, 2020, Judge Filbert granted Detective Driscoll's search warrant application, which contained all the information from the search warrant application.

52. The search was required to take place within 10 days of the issuance of the search warrant.

53. Nowhere in the search warrant application or the search warrant do either of the documents make note the item in the package was a solvent trap, which is legal to purchase and own, and that further steps needed to be taken to convert the solvent trap into an illegal firearm silencer.

54.    Moreover, nowhere in the search warrant application does Detective Driscoll make a differentiation between an unaltered solvent trap, which is entirely legal, and an altered solvent trap, which is illegal.

55.    According to the West Seneca Police Department Police Report (the "police report") On January 7, 2020, West Seneca Police Department Detectives Baranowski, Driscoll, Jeffrey Coia, Jamie Pappaceno, Gerald Fibich, and Robert Deppeler were joined by Special Agents Glenn Erny, Melania Meyers, March Matla, Matthew DellPenta, and Peter Colafranceschi from HSI; Special Agents Gerald O'Sullivan and Brian Tumiel from the U.S. Department of Alcohol, Tobacco, Firearms, and Explosives; ICE Agent Roderick Harville; and U.S. Postal Inspector's Office Agents Josh Burch, Brendan Jaffe, and Shelly Carosella to execute the search warrant by Judge Filbert on Mr. Andrews's home.

56.    U.S. Postal Inspector Office Agent Shelley Carosella hand delivered Mr. Andrews the package containing the solvent trap.

57.    According to the police report, less than five minutes after Mr. Andrews received the package, the West Seneca Police Department Detectives made contact with Mr. Andrews by knocking on his front door.

58.    Mr. Andrews was taken out through the front door, placed in handcuffs, patted down for weapons, and Detective Driscoll advised Mr. Andrews of his Miranda Rights.

59.    Mr. Andrews indicated he was aware of his Miranda Rights.

60.    Detective Driscoll and Melania Meyers were told Mr. Andrews would not answer any questions without his attorney.  While Mr. Andrews was on his cellphone with his landlord, Kelly Cronin, Detective Driscoll took Mr. Andrews's phone away and told Ms. Cronin that Mr. Andrews ordered and received an illegal silencer.

61.     By telling Ms. Cronin that Mr. Andrews ordered and received an illegal silencer, Detective Driscoll put Mr. Andrews's living situation into an uncertain position.

62.     Following the arrest of Mr. Andrews, the search warrant was executed by the personnel listed in ¶ 53.

63.     The personnel listed in ¶ 53 took the following items from Mr. Andrews's home and sent them to the West Seneca Police Department's headquarters located at 1250 Union Road, West Seneca, New York: (1) the solvent trap, (2-3) two silver 1911 handguns, (4) a Glock 23 .40, (5) a Sig Sauer P226 .40, (6) a Glock 27 .40, (7) an AR style long-barrel rifle, (8) a Glock 43 9mm, (9) 7 loaded rifle magazines, (10) a flashlight style silencer, (11-12) two firearms denial letters, (13) an AR type receiver, (14) 12 assorted magazines with ammunition, (15) boxes of assorted ammunition, (16) a Model 85 8mm pistol, (17) a Burni Model 92 8mm pistol, and (18) a 1911 style receiver (the "inventory").  Also sent to the West Seneca Police Department's headquarters was a Marlin Mod rifle, a Savage Model 3 bolt action rifle, a Winchester rifle, and a Mossberg Shotgun.

64.     Mr. Andrews was sent to the West Seneca Police Department's headquarters for questioning, where he was formally interviewed by West Seneca Police Department Detectives Jamie Pappaceno and Lt. Detective Kevin Baranowski.

65.     During the interrogation by Detectives Pappaceno and Baranowski, the WSPD detectives admitted on multiple occasions that they knew the item purchased by Mr. Andrews was a solvent trap and that unaltered the solvent trap was legal for Mr. Andrews to purchase and own.

66.     In fact, Detective Pappaceno stated that "ATF tells me" that there are "some steps" needed to convert the solvent trap ordered by Mr. Andrews into an illegal firearm silencer.

13

67.     Nevertheless, Detectives Pappaceno and Baranowski repeatedly asserted that the otherwise legal solvent trap purchased by Mr. Andrews was in fact an illegal firearm silencer merely because the detectives believed that Mr. Andrews possessed the knowledge and ability to potentially convert the solvent trap into a silencer as demonstrated by his business as a seller of "ghost guns."

68.     Notably, those allegations regarding Mr. Andrews's knowledge and ability to convert the solvent trap into a firearm silencer were not contained in the search warrant application, and Detective Driscoll merely attested in the search warrant affidavit submitted to Judge Filbert that the item being sent to Mr. Andrews was an illegal firearm silencer.

69.     Upon information and belief, the WSPD detectives were informed before the illegal search that the item being sent to Mr. Andrews was a solvent trap, but falsely alleged that the item was a firearm silencer in the search warrant application.

70.     Mr. Andrews was charged with 8 counts of Felony Criminal Possession of a Weapon in the Third Degree.

71.     The criminal complaints that charged Mr. Andrews with said crimes were signed by Detectives Donald Driscoll and Robert Deppeler.

72.     Those charges were based on falsified evidence submitted by one or more of the WSPD officers—to wit, Kevin Baranowski, Donald Driscoll, Jeffrey Coia, Jamie Pappaceno, Gerald Fibich, and/or Robert Deppeler.  Specifically, one or more WSPD officers assembled the "ghost guns" kept by Mr. Andrews (the inventory listed in ¶ 61), and the WSPD officers falsely claimed that they seized fully assembled guns from Mr. Andrews's property.

73.     In fact, WSPD admitted in its "Firearms Analysis Report" that Mr. Andrews's Sig Sauer P226 was "partially disassembled with the slide/barrel assembly

separated from the frame." WSPD officers assembled and tested the Sig Sauer P226 and, when "analyzed in this manner, the pistol . . . [was] operable."

74.    Notably, "ghost guns," or firearms that a partially assembled from kits and do not carry serial numbers, are legal as they are not considered "firearms" by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") under the Gun Control Act.

75.    Mr. Andrews was engaged in the business of selling "ghost guns," which he typically shipped as "80 percent receivers" – meaning that the gun was 80 percent complete, and buyers would have to assemble the final 20 percent themselves.

76.    As part of his business, Mr. Andrews would advise his customers how to perform the machining of the ghost gun kits as the kits generally need to be drilled to complete the frame.

77.    However, Mr. Andrews never sold to his customers fully assembled guns, and the guns that were seized from his home on January 7, 2020 were "80 percent receivers," which were legal under then-prevailing rules promulgated by ATF as "80 percent receivers" or "ghost guns" are not considered "firearms."

78.    In other words, Mr. Andrews's business was completely legal under then-prevailing rules promulgated by ATF.

79.    Nevertheless, at approximately 9:30 p.m. on January 7, 2020, Mr. Andrews was arraigned by Judge Jeffrey Harrington of the West Seneca Justice Court and charged with 8 counts of Felony Criminal Possession of a Weapon based solely on the falsified evidence submitted by WSPD officers regarding the "ghost guns" that were seized from Mr. Andrews's home and assembled by WSPD officers.

80.    Mr. Andrews was released but was prohibited from traveling outside Erie County and was not allowed to have any weapons of any kind.

81.    Mr. Andrews's restriction on the freedom to travel and to bear arms, along with his required attendance to numerous court appearances based off a bogus search warrant resulted in feelings of shock, humiliation, and embarrassment.

82.    As stated above, Mr. Andrews was granted a Certificate of Relief from Disability in May 2011, but the judge failed to include the phrase "ability to buy, own, and possess firearms." Therefore, Mr. Andrews applied for a corrected Certificate of Relief from Disabilities in November 2019 which was granted on February 11, 2020.

83.    The February 11, 2020 Certificate of Relief from Disabilities provided Mr. Andrews the right to possess, purchase, or receive a firearm for any purpose.

84.    On January 14, 2021, Mr. Andrews moved before Judge Christopher J. Burns, J.S.C., the Supervising Judge for Criminal Matters in Erie County, to suppress the inventory obtained pursuant to the search warrant and the subsequent search.

85.    In a Decision and Order dated January 14, 2021, all the inventory of the search was suppressed.

86.    Judge Burns reasoned that the inventory was to be suppressed because the false categorization of the legal solvent trap as an illegal firearms suppressor was knowingly, intentionally, or with reckless disregard for the truth.

87.    Following Judge Burns's decision and order suppressing the evidence obtained by law enforcement, the prosecutor agreed to dismiss all charges against Mr. Andrews.

88.    After the charges were dismissed, Mr. Andrews called Daniel Denz, the Chief of the West Seneca Police Department ("Chief Denz"), asking that the inventory be returned to him.

89.     Chief Denz advised Mr. Andrews that he would have to submit an Article 78 Petition to have the inventory returned to him on instructions from the Erie County District Attorney.  To date, the inventory seized from Mr. Andrews has not been returned to him.

90.     Mr. Andrews would not have had to go through this chain of events had it not been for the aforementioned departments and agencies recklessly and falsely claiming Mr. Andrews's legal solvent trap was an illegal silencer, failing to differentiate between a solvent trap and a silencer in the search warrant application, and the illegal search stemming from the bogus search warrant.

91.     As a direct and proximate result of the defendants' conduct, Mr. Andrews has been compelled to retain the services of counsel to protect and enforce his rights, and therefore, Mr. Andrews has incurred and continues to incur attorneys' fees, expert fees, and costs for which Mr. Andrews is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### Unreasonable Search and Seizure under *Bivens* and 42 U.S.C. § 1983
### Against All Defendants

92.     Mr. Andrews incorporates the allegations contained in paragraphs 1 through 91 of this amended complaint as if fully set forth herein.

93.     At all relevant times, Mr. Andrews enjoyed and possessed a right under the Fourth and Fourteenth Amendment of the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in his person, home, personal effects, and property.

94.     As described above, Defendants unlawfully and unreasonably entered and searched (or caused the entrance and search through their actions described above) of Mr. Andrews and his home and property, without lawful authority in the form of probable cause or a validly issued judicial search warrant naming Mr. Andrews or the premises.

95.     Defendants forcefully entered into Mr. Andrews's home, searched his home and property, and destroyed and seized items of personal property from Mr. Andrews and the residence.

96.     Defendants continued to search Mr. Andrews's home and property and destroyed and seized items of personal property from Mr. Andrews and the residence without lawful authority.

97.     As a direct and proximate result of Defendants' unlawful actions as alleged herein, defendants deprived Mr. Andrews of his rights under the Fourth and Fourteenth Amendment to be free from unreasonable search and seizure.

98.     Defendants' conduct was outrageous, intentional, and malicious, or at the very least grossly negligent, exhibiting a reckless disregard and deliberate indifference for Mr. Andrews's rights.

99.     Defendants' initial entry into Mr. Andrews's home as well as Defendants' subsequent search and seizure of Mr. Andrews's home and property was not otherwise privileged

18

and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

100.   The State Defendants at all relevant times were acting under the color of state law.

101.   The Federal Defendants at all relevant times were acting under the color of Federal law.

102.   As a direct and proximate result of the foregoing, Mr. Andrews was damaged and injured in an amount to be determined at trial.

103.   The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Andrews claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
**Violation of Mr. Andrews's Right Against Unreasonable Search and Seizure by Presenting a False Affidavit in Support of a Search Warrant under *Bivens* and 42 U.S.C. § 1983**
<u>**Against Jamie Pimentel, Glenn Erny, and Donald Driscoll**</u>

104.   Mr. Andrews incorporates the allegations contained in paragraphs 1 through 103 of this amended complaint as if fully set forth herein.

105.   On January 6, 2020, Defendants obtained a search warrant allowing the search of Mr. Andrews's residence.

106.   To obtain the search warrant, defendant Driscoll, relying entirely on the false information forwarded to him by defendants Pimentel and Erny without performing any independent investigation, presented to Town of West Seneca Justice Court Judge Shannon Filbert a false affidavit in support of the search warrant for Mr. Andrews's residence.

107. The affidavit defendant Driscoll presented to Judge Filbert contained materially false information – *i.e.* that the solvent trap was instead an illegal firearm silencer.

108. Without defendant Driscoll's inclusion of the materially false information, the search warrant would not have issued.

109. Defendant Driscoll included in his affidavit materially false information deliberately, in conscious disregard for the truth, and knowing said information to be false.

110. Defendants executed said search warrant and searched and seized Mr. Andrews's residence pursuant to said search warrant, which was based upon the knowingly false affidavit defendant Driscoll, based on the false information provided by defendants Erny and Pimentel, submitted in support of the search warrant.

111. At all relevant times, defendants Erny and Pimentel were acting under the color of Federal law.

112. At all relevant times, defendant Driscoll was acting under the color of state law.

113. As a direct and proximate result of the foregoing, Mr. Andrews was damaged and injured in an amount to be determined at trial.

114. The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Andrews claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## THIRD CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**False Arrest under FTCA, State Law, and 42 U.S.C. § 1983**
**<u>Against all Defendants</u>**

115.    Mr. Andrews incorporates the allegations contained in paragraphs 1 through 114 of this amended complaint as if fully set forth herein.

116.    Defendants are liable pursuant to the FTCA, State Law, and 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Mr. Andrews in violation of New York State law and the Fourth and Fourteenth Amendments to the United States Constitution.

117.    State Defendants were acting under the color of state law when Mr. Andrews was arrested.

118.    Federal Defendants were acting under the color of Federal law when Mr. Andrews was arrested.

119.    Defendants did not have probable cause to charge that Mr. Andrews violated any State or Federal law.

120.    Defendants deprived Mr. Andrews of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of the FTCA, State Law, and 42 U.S.C. § 1983.

121.    Defendants confined Mr. Andrews when they handcuffed him and told him he was going to jail on January 7, 2020.

122.    Defendants continuously confined Mr. Andrews until he was released after arraignment on January 7, 2020.

123.    Mr. Andrews was aware of the confinement by Defendants and repeatedly advised the officers that he did not consent to the confinement.

124.    The confinement by Defendants was not otherwise privileged and was performed in violation of New York State law and the Fourth and Fourteenth Amendments of the Constitution of the United States.

125.    As a direct and proximate result of the foregoing, Mr. Andrews was damaged and injured in an amount to be determined at trial.

126.    The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Andrews claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### False Imprisonment under FTCA, State Law, and 42 U.S.C. § 1983
### Against All Defendants

127.    Mr. Andrews incorporates the allegations contained in paragraphs 1 through 126 of this amended complaint as if fully set forth herein.

128.    Defendants are liable pursuant to the FTCA, State Law, and 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Mr. Andrews in violation of State Law and the Fourth and Fourteenth Amendments to the United States Constitution.

129.    State Defendants were acting under the color of state law when Mr. Andrews was arrested and imprisoned.

130.    Federal Defendants were acting under the color of Federal law when Mr. Andrews was arrested and imprisoned.

131.    Defendants did not have probable cause to charge that Mr. Andrews violated any State or Federal law.

132.     Defendants deprived Mr. Andrews of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of the FTCA, State Law, and 42 U.S.C. § 1983.

133.     Defendants confined Mr. Andrews when they handcuffed him and told him he was going to jail on January 7, 2020.

134.     Defendants continuously confined Mr. Andrews until he was released after arraignment on January 7, 2020.

135.     Mr. Andrews was aware of the confinement by Defendants and repeatedly advised the officers that he did not consent to the confinement.

136.     The confinement by Defendants was not otherwise privileged and was performed in violation of New York State law and the Fourth and Fourteenth Amendments of the Constitution of the United States.

137.     As a direct and proximate result of the foregoing, Mr. Andrews was damaged and injured in an amount to be determined at trial.

138.     The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Andrews claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.


### FIFTH CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Malicious Prosecution under the FTCA, State Law, and 42 U.S.C. § 1983**
**<u>Against All Defendants</u>**

139.     Mr. Andrews incorporates the allegations contained in paragraphs 1 through 138 of this amended complaint as if fully set forth herein.

140.    Defendants unreasonably seized and unlawfully arrested Mr. Andrews in violation of New York State law and the Fourth and Fourteenth Amendment of the United States Constitution.

141.    Upon information and belief, Defendants despite knowing that probable cause did not exist to detain, arrest, and prosecute Mr. Andrews for any violations of New York State or Federal law, acted intentionally, and with malice, to cause Mr. Andrews to be arrested, charged and prosecuted for those charges, thereby violating Mr. Andrews's rights pursuant to New York State law and the Fourth and Fourteenth Amendments of the United States Constitution.

142.    The prosecution of the charges levied by Defendants against Mr. Andrews on January 7, 2020 were terminated in Mr. Andrews's favor.

143.    But for Defendants' unlawful and malicious conduct, Mr. Andrews would not have been arrested and prosecuted.

144.    Upon information and belief, Defendants' actions and conduct were malicious and deprived Mr. Andrews of his liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that his or her actions were lawful.

145.    At all relevant times, State Defendants were acting under the color of state law.

146.    At all relevant times, Federal Defendants were acting under the color of Federal law.

147.    As a direct and proximate result of the foregoing, Mr. Andrews was damaged and injured in an amount to be determined at trial.

148.    The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Andrews claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS
**Failure to Intervene under *Bivens*, FTCA, State Law, and 42 U.S.C. § 1983**
**<u>Against All Defendants</u>**

149.    Mr. Andrews incorporates the allegations contained in paragraphs 1 through 148 of this amended complaint as if fully set forth herein.

150.    Defendants failed to take reasonable steps to prevent their fellow officers from engaging in the illegal acts alleged herein, though they were present at the scene of such violations and were capable of doing so.

151.    Defendants' actions violated Mr. Andrews's Constitutionally-protected rights under the Fourth and Fourteenth Amendments.

152.    Defendants knew, or reasonably should have known, that their conduct violated Mr. Andrews's clearly established Constitutionally-protected rights and rights under New York State law.

153.    Defendants acted with intent to violate, or with deliberate or reckless indifference to, Mr. Andrews's clearly established rights under New York State law and the Fourth and Fourteenth Amendments of the United States Constitution.

154.    At all relevant times, State Defendants were acting under the color of state law.

155.    At all relevant times, Federal Defendants were acting under the color of Federal law.

156.     As a direct and proximate result of the foregoing, Mr. Andrews was damaged and injured in an amount to be determined at trial.

157.     The aforesaid conduct by Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Andrews claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.


### SEVENTH CLAIM FOR RELIEF

**VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS**
**Conspiracy to Violate Mr. Andrews's Constitutional Rights**
**under *Bivens* and 42 U.S.C. § 1983**
**Against All Defendants**

158.     Mr. Andrews incorporates the allegations contained in paragraphs 1 through 157 of this amended complaint as if fully set forth herein.

159.     By and through the actions described above, Defendants, acting under the color of state or Federal law, conspired to deprive Mr. Andrews of his Constitutional rights, in violation of *Bivens*, 42 U.S.C. § 1983, and his Fourth and Fourteenth Amendment as guaranteed by the United States Constitution.

160.     Defendants conspired amongst themselves to illegally enter and search Mr. Andrews's home.

161.     Defendants agreed to deprive Mr. Andrews of his Constitutional rights and deprived him of his Constitutional rights by illegally entering and searching Mr. Andrews's home and/or causing law enforcement to enter and search Mr. Andrews's home by disseminating false information that Plaintiff was having an illegal firearm silencer mailed to his home, thereby causing Mr. Andrews physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

162.    At all relevant times, State Defendants were acting under the color of state

law.

163.    At all relevant times, Federal Defendants were acting under the color of

Federal law.

164.    As a direct and proximate result of the foregoing, Mr. Andrews was

damaged and injured in an amount to be determined at trial.

165.    The aforesaid conduct by Defendants was willful, malicious, oppressive,

and/or reckless and was of such a nature that Mr. Andrews claims punitive damages against each

of them in an amount commensurate with the wrongful acts alleged herein.


**EIGHTH CLAIM FOR RELIEF**

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**Policy, Custom, and Practice of Defendants and**
**Failure to Supervise and Train under 42 U.S.C. § 1983**
**<u>Against Town of West Seneca</u>**

166.    Mr. Andrews incorporates the allegations contained in paragraphs 1

through 165 of this complaint as if fully set forth herein.

167.    Prior to January 2020, The Town of West Seneca Police Department

developed and maintained policies, customs, and practices exhibiting deliberate indifference to

the Constitutional rights of persons in the Town of West Seneca, which caused the violation of

Mr. Andrews's rights.

168.    At all relevant times, the Town of West Seneca was aware that

Kevin Baranowski, Donald Driscoll, Jeffrey Coia, Jamie Pappaceno, Gerald Fibich, and

Robert Deppeler were inadequately trained regarding the Fourth and Fourteenth Amendment, yet

defendants, the Town of West Seneca maintained a policy or custom of failing to provide

Kevin Baranowski, Donald Driscoll, Jeffrey Coia, Jamie Pappaceno, Gerald Fibich, and Robert Deppeler training on the Fourth and Fourteenth Amendment or adequate supervision.

169. It was the policy, custom, or both of defendant the Town of West Seneca inadequately to supervise and train its police officers, Kevin Baranowski, Donald Driscoll, Jeffrey Coia, Jamie Pappaceno, Gerald Fibich, and Robert Deppeler, thereby failing to prevent the Constitutional violations against Mr. Andrews.

170. Defendant West Seneca failed to properly screen its officers and retained officers who have a history of inappropriate and unlawful acts, and defendant has failed to properly train and supervise members of the Town of West Seneca Police Department, and failed to provide proper procedures and policies of the Department, including (i) procedure to properly determine when officers have probable cause to enter an individual's home; (ii) procedure to properly announce an officer's presence when an officer seeks to enter an individual's home; (iii) procedure to properly enter an individual's home once an officer determines there is probable cause to enter the home; (iv) procedure to properly enter an individual's home once an officer determines there is probable cause to enter the home and an individual in the home tells the officer they cannot enter without a warrant; (v) procedure for the use of force or threat to use force by officers when arresting an individual; (vi) procedure for accurately reporting an officer's basis for believing there is probable cause to enter and search an individual's home when applying to obtain a search warrant; (vii) procedure for waiting for a properly obtained search warrant before seizing an individual's property; (viii) procedure to verify information provided from a different law enforcement agency before relying on that material information when obtaining a search warrant; and (viii) the procedure for investigating an individual's claim that officers illegally entered his or her home and illegally searched and seized his or her property.

171.    Defendant West Seneca's policies, customs, and practices demonstrate a deliberate indifference to the Constitutional rights of persons within the Town of West Seneca and caused the violation of Mr. Andrews's rights alleged herein.

172.    Defendant the Town of West Seneca ratified and acquiesced in the unlawful conduct of the other defendants herein, as evidenced by their failure to discipline the other defendants, by their refusal to investigate the underlying illegal entry and search of Mr. Andrews's home.

173.    In addition, it was the policy, custom, or both of Defendant the Town of West Seneca to promote police officers who have had substantial complaints of police misconduct lodged against them by Town of West Seneca residents thereby exhibiting deliberate indifference to the constitutional rights of persons in the Town of West Seneca and which contributed to the constitutional violations against Mr. Andrews.

174.    For example, on April 25, 2010, West Seneca citizen Jeffrey J. Edwards was shot and paralyzed by four WSPD officers, including defendants Robert Deppeler, Kevin Baranowski, and Donald Driscoll.

175.    In a police dash cam video of the incident, Mr. Edwards can be seen putting his hands out of the driver's side window trying to surrender.  Seconds later, WSPD officers, including Deppeler, Baranowski, and Driscoll fired more than 60 rounds which hit Mr. Edwards in the back and then the neck.

176.    The shot to Mr. Edwards's neck caused paralysis and ultimately his death four years later.

177.    Although the four WSPD officers were cleared of any wrongdoing, and despite no departmental or disciplinary action being brought against them by WSPD, the Town of West Seneca paid a settlement of $4.65 million to Mr. Edwards's estate.

178.    At the time of the 2010 incident, defendants Deppeler, Baranowski, and Driscoll were all officers with WSPD.  Since the incident, all three individuals have been promoted to the position of detective.

179.    Thus, not only were defendants Deppeler, Baranowski, and Driscoll not disciplined for their actions, all three individuals have in fact been promoted since the incident.

180.    The lack of discipline for the officers, as well as their promotion after the incident, are consistent with the policy and custom of the Town of West Seneca to not discipline its officers for clear officer misconduct – even if that misconduct is captured by video.

181.    As a direct and proximate result of the defendant's policies, customs, and practices, Mr. Andrews was damaged and injured in an amount to be determined at trial.

## **DEMAND FOR JURY TRIAL**

182.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## **PRAYER FOR RELIEF**

Plaintiff, John Andrews, prays for relief and demands judgment as follows:

1.    That Mr. Andrews be awarded compensatory damages against all Defendants in an amount to be determined at trial;

2.    That Mr. Andrews be awarded punitive damages against all Defendants in an amount to be determined at trial;

3.     That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding

Plaintiff reasonable attorneys' fees, together with the costs of this action against all Defendants;

and

4.     That this Court award such other further relief, together with any other

legal or equitable relief, or both, as the Court deems just and proper.


Dated:     July 15, 2022
           Buffalo, New York


                              **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                              Attorneys for Plaintiff
                              _____

                                   *s/Chad A. Davenport*
                              _____
                                   R. Anthony Rupp III
                                   Chad A. Davenport
                              1600 Liberty Building
                              Buffalo, New York  14202
                              Phone:  (716) 854-3400
                              rupp@ruppbaase.com
                              davenport@ruppbaase.com

31